IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SECURITIES & EXCHANGE
COMMISSION,

　　　　Plaintiff,

v.

HEDGELENDER LLC, et al.

　　　　Defendants.

Case No. 2:09-cv-859

JUDGE EDMUND A. SARGUS, JR.

MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

This matter is before the Court on the following motions: Plaintiff Securities and Exchange Commission's Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 13); Plaintiff Securities and Exchange Commission's Amended Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 16); and the Motion by Defendants HedgeLender LLC, Daniel W. Stafford, and Fred R. Wahler, Jr. for Leave to File a Sur-Reply in Further Opposition to Plaintiff's Amended Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 31). These motions have been fully briefed and are now ripe for disposition. For the following reasons, Plaintiff Securities and Exchange Commission's Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 13) is denied as moot; Plaintiff Securities and Exchange Commission's Amended Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 16) is granted as framed; and the Motion by Defendants HedgeLender LLC, Daniel W. Stafford, and Fred R. Wahler, Jr. for Leave to File a Sur-Reply in Further Opposition to Plaintiff's Amended Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 31) is granted.

### I. Background

On September 30, 2009, the Securities and Exchange Commission ("SEC") initiated this action against Defendants HedgeLender LLC ("HedgeLender"), Daniel W. Stafford ("Stafford"),

and Fred R. Wahler, Jr. ("Wahler"). In its Complaint, the SEC alleges that HedgeLender and its two principals, Stafford and Wahler, made material misrepresentations to clients in connection with a fraudulent stock-based loan scheme operated by Michael and Melissa Spillan ("the Spillans") through One Equity Corporation and its affiliates ("One Equity"). Compl. ¶ 1. The Complaint further alleges that HedgeLender held itself out as a stock-based loan broker and "the top-rated U.S. specialist in non-recourse hedged stock portfolio loans" for more than a decade. Compl. ¶¶ 2, 19. From February 2006 through at least November 2007, HedgeLender—though its website and affiliates—marketed One Equity's stock-based loan program Star HedgeLoan to potential borrowers. Compl. ¶ 2, 20. During this period, HedgeLender referred approximately fifty-four borrowers to One Equity and received approximately $1.7 million in commissions. Compl. ¶ 2. In connection with these referrals, HedgeLender paid approximately $356,085.00 to Stafford, and $298,065.00 to Wahler.

According to the Complaint, Defendants represented to potential clients that it had certified the Star HedgeLoan, had vetted the professional reputations of those who administered the programs, and ensured the security of borrowers' shares. Compl. ¶ 3. In particular, the Complaint stated:

> 21. First HedgeLender certified that the Star HedgeLoan met "the most rigorous standards of security and compliance in the industry." It qualified the Star HedgeLoan under its HedgeLoan certification program, which HedgeLender touted as a "'best of breed' evaluation standard for four superior loan structures that have met our "rigorous requirements for regulatory compliance, borrower value, and asset security." HedgeLender represented that HedgeLoan certification was "reserved only for those loan structures that have been built from the ground up with strict adherence to regulatory and legal compliance as a first priority."
>
> 22. In certifying the Star HedgeLoan, HedgeLender represented that the loan program provided the following:
>
>    (a) Top-tier, transparent, U.S.-based credit and account facilities;
>    (b) Regulation-compliant structures;
>    (c) Comprehensive account statements;

2

    (d) Responsive 24-hour service; and
    (e) Direct asset management by [vetted] licensed individuals or organizations with outstanding [verified] reputations for execution and performance extending at least 15 years.

  23. Second, HedgeLender represented that there would be "full protection" for shares pledged as collateral for HedgeLoans. It warranted that "[f]ull share security is assured from start to finish for every loan, from the smallest to the largest." HedgeLender minimized the risks that borrowers would face in pledging shares as collateral for the stock-based loans:

> Security and compliance are the basic building blocks of our company. HedgeLender's HedgeLoan label is in essence a form of "certification" that says your hedged portfolio funding structure meets the highest standards for security, compliance, liquidity, and personal service in the industry possible. In practical terms, we feel safe in saying that your shares are as safe as any investment with HedgeLender.

  24. HedgeLender specifically represented that all shares pledged as collateral for HedgeLoans "[had] been secured and immediately returned for *every* repaid HedgeLender loan since its inception." HedgeLender also represented that borrowers would receive quarterly account statements so that they could monitor the performance of their shares versus their loan obligation.

Compl. ¶¶ 21-24 (alterations in original).

In addition, the SEC alleges that, in fact, HedgeLender conducted almost no due diligence and failed to investigate warning signals that cast doubt on One Equity's ability to administer and fund its stock-based loans. Compl. ¶¶ 3, 27. According to the Complaint:

> Adequate due diligence would have revealed that One Equity never had a funding source, credit lines, a relationship with a pension fund or bank, or capital reserves. It would have revealed that One Equity funded loans by dumping shares. It would have revealed that One Equity's agents did not have lending experience and that One Equity had never run a legitimate stock-based lending operation and did not have a viable hedging strategy or lending model.

Compl. ¶ 28.

On October 1, 2009, the Court entered separate orders of permanent injunction by consent against HedgeLender (Doc. 6), Stafford (Doc. 5), and Wahler (Doc. 4). Section III of each of the three orders provides that, "Defendant shall pay disgorgement of ill-gotten gains,

3

prejudgment interest thereon, and a civil penalty." Each order further provides that, upon motion of the SEC, the Court shall determine the amounts of disgorgement and civil penalty. Finally, in pertinent part, the Court ordered as follows:

> In connection with the [SEC]'s motion for disgorgement and/or civil penalties, and at any hearing held on such motion: (a) Defendant[s] will be precluded from arguing that [they] did not violate the federal securities law as alleged in the Complaint; (b) Defendant[s] may not challenge the validity of the Consent or this Order; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the federal Rules of Civil Procedure.

Doc. 4, at 3; Doc. 5, at 3; Doc. 6 at 3.

Pursuant to the above-mentioned orders, the SEC now moves the Court, seeking disgorgement with prejudgment interest and third-tier civil penalties against Defendants. Defendants respond that they should not be liable for the full amount of disgorgement sought by the SEC, that the Court should not award prejudgment interest, and that the Court should impose lesser sanctions than third-tier civil penalties.

## II. Analysis

### A. Disgorgement

The SEC seeks disgorgement from HedgeLender of the amount it received in payments from One Equity, and it seeks from Stafford and Wahler, jointly and severally with HedgeLender, any money they received from HedgeLender that is reasonably attributable to payments from One Equity. In support of its position, the SEC has submitted a declaration from Luz M. Aguilar, Senior Accountant with the SEC, who states that HedgeLender's bank records show that HedgeLender received $1,719,567.00 from One Equity between February 2006 and November 2007. (Aguilar Decl., Doc. 17-6, at ¶¶ 5-6.) Ms. Aguilar's declaration further states that, HedgeLender's bank record, payroll records, and tax forms indicate that HedgeLender paid

4

Stafford approximately $356,085.00, and Wahler approximately $298,065.00 from One Equity income. (Aguilar Decl., Doc. 17-6, at ¶¶ 8-11.)

Disgorgement of illicit gains is an appropriate equitable remedy for violations of federal securities laws. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d 923, 968 (S.D. Ohio 2009) (collecting cases). "The purpose of disgorgement is to force a defendant to give up the amount by which he was unjustly enriched. . . ." *S.E.C. v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985). The amount of money subject to disgorgement in a given case is measured by "the entire amount of profits which were illicitly received" as a result of the defendant's wrongdoing. *S.E.C. v. Great Lakes Equities Co.*, 775 F.Supp. 211, 214 (E.D. Mich. 1991) (citing *Blavin*, 760 F.2d at 710)); *Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d at 968. All doubts concerning the amount of disgorgement must be resolved against the wrongdoer. *Id.* at 214 (citing *SEC v. First City Fin. Corp.*, 688 F.Supp. 705, 727 (D.D.C.1988), *aff'd* 890 F.2d 1215 (D.C.Cir.1989)). The SEC is not required "to produce data to measure the precise amount of the ill-gotten gains," but rather need merely show that the amount of disgorgement it requests is a "reasonable approximation of the profits causally connected to the violation." *First City Fin.*, 890 F.2d at 1231. In securities law cases, joint and several liability may be imposed for the amount of disgorgement in which two or more defendants have a close relationship in engaging in the illegal conduct. *Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d at 968; *S.E.C. v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004) (collecting cases)).

Defendants in this action contend that they should not be required to disgorge the full amount of disgorgement sought by the SEC for two reasons. As their first reason, they claim that no violations occurred until mid-summer 2007, when HedgeLender was first put on notice regarding delays and funding shortfalls in connection with three loans. According to

5

Defendants, they should not be required to disgorge any commission payments they received before becoming aware of the delays and shortfalls in mid-2007, because their failure to conduct due diligence before that time does not constitute a violation of securities law, since such failure amounts to mere negligence.

In reply, the SEC correctly observes that the gravamen of its Complaint is not that Defendants failed to conduct due diligence on One Equity and its Star HedgeLoan program. Rather, the Complaint alleges that HedgeLender and its principals intentionally or recklessly misrepresented to their prospective clients that they had conducted extensive due diligence when they knew, in fact, that they had not. As discussed above, SEC alleges in the Complaint that Defendants referred approximately fifty-four borrowers to One Equity from February 2006 through at least November 2007, in exchange for approximately $1.7 million in commission payments. The Complaint also alleges that Defendants knowingly or recklessly misrepresented the due diligence HedgeLender conducted in connection with its Star HedgeLoan product to all clients referred to One Equity from February 2006 to November 2007. Insofar as the Complaint alleges that Defendants failed to heed "red flag" warnings that arose in mid-summer 2007, the allegations concern HedgeLender's failure to revise its representations in light of those warnings.

In light of the consent orders entered by this Court on October 1, 2009, which expressly preclude Defendants from arguing that they did not violate the federal securities laws as alleged in the Complaint, Defendants cannot now claim lack of scienter. The Complaint is replete with allegations that Defendants acted knowingly or recklessly in representing that they had conducted due diligence on One Equity's Star HedgeLoan program when in fact they knew that they had not. Moreover, Defendants do not dispute that they failed to conduct due diligence or that they represented otherwise to their potential clients. On these facts, Defendants acted at

6

least recklessly by making the representations about the validity and solidity of the Star HedgeLoan program set forth in the Complaint without thorough investigation of their accuracy. *See Blavin*, 760 F.2d at 711 (upholding district court's finding that defendant acted recklessly, and therefore with requisite scienter, "by relying, without thorough investigation, upon the information that corporate representatives provided him"). "Recklessness is a sufficiently culpable state of mind to support a finding of liability under Section 10(b) and Rule 10b-5." *Id.* (citing *Davis v. Avco Fin. Servs., Inc.*, 739 F.2d 1057, 1063 (6th Cir. 1984); *Ohio Drill & Tool Co. v. Johnson*, 625 F.2d 738, 741 (6th Cir. 1980)). In addition, Defendants' representations that they had conducted due diligence were made intentionally with the knowledge that that they had not.

Moreover, the consent orders previously entered by the Court order that prejudgment interest shall be calculated from February 16, 2006. For prejudgment interest to be calculated from that date, so, too, must the disgorgement amount. Thus, implicit in these consent orders are Defendants' concessions that the disgorgement amount be calculated from February 16, 2006, as well.

Based upon the foregoing, the Court finds that the SEC's Complaint sets forth sufficient scienter allegations regarding Defendants' conduct in connection with the misrepresentations Defendants made to potential Star HedgeLoan clients to warrant disgorgement of commissions received from February 16, 2006 onward.

As the second argument that they should not be required to pay the full amount of disgorgement requested by the SEC, Defendants claim that they should receive offsets for commissions paid to third parties. In the Sixth Circuit, the general rule is that securities law violators must disgorge all profits received from their illicit conduct. *See Blavin*, 760 F.2d at

7

713; *Sierra Brokerage Servs.*, 608 F. Supp.2d at 968. Defendants argue that the proper measure of the amount to be disgorged is HedgeLender's net profits, the determination of which—in Defendants' view—requires the deduction of commission paid by HedgeLender to third parties as part of HedgeLender's transaction costs. HedgeLender concedes, however, that intentional wrongdoers are generally denied any offsets. Df.'s Mem. In Opp. (Doc. 21), at 14. *See, e.g., S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1114-15 (9th Cir. 2006); *S.E.C. v. Levine*, 517 F. Supp.2d 121, 135 (D.D.C. 2007); *SEC v. Thorn*, No. 2:01-CV-290, 2002 WL 31412439 (S.D. Ohio Sept. 30, 2002); *S.E.C. v. Kenton Capital, Ltd.*, 69 F. Supp.2d 1, 16 (D.D.C. 1998); *Great Lakes Equities*, 775 F. Supp. at 214-15; *S.E.C. v. Benson*, 657 F. Supp. 1122, 1134 (S.D.N.Y. 1987).

The Complaint alleges that Defendants—through the HedgeLender website and HedgeLender affiliate staff—made intentional misrepresentations about the Star HedgeLoan program administered by One Equity. Compl. ¶¶ 1, 19-26. As discussed above, even if the representations about the validity and solidity of the Star HedgeLoan program were made recklessly without thorough investigation of their accuracy, the allegations in the Complaint make demonstrably clear that Defendants' misrepresentations about HedgeLender's due diligence were made intentionally, with the knowledge that HedgeLender had not conducted the degree of due diligence it represented to have undertaken to potential clients. Absent those misrepresentations, Defendants would not have induced clients to enter into fraudulent stock-based loan agreements, and Defendants therefore would not have earned any commissions. Moreover, as the Complaint alleges, Defendants used their referring affiliates to convey the misrepresentations. Although Defendants characterize the referring affiliates as "independent referring brokers," the SEC has presented evidence, which Defendants have not refuted, that the

8

referring brokers were held out to the public as "members of HedgeLender's committed staff" and members of "the HedgeLender Service Team." Defendants cannot now argue that these individuals are unrelated third parties. Thus, the commissions paid to affiliates for OneEquity Star HedgeLoan referrals are properly viewed as illegitimate expenses and are therefore subject to disgorgement.

### B. Prejudgment Interest

The SEC also seeks prejudgment interest on the disgorgement amount. That district courts have the equitable power to order prejudgment interest on the disgorgement amount is well settled. *Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d at 968 (citing *SEC v. Falbo,* 14 F.Supp.2d 508, 527-28 (S.D.N.Y.1998)). Prejudgment interest is awarded to prevent a defendant from "'obtaining the benefit of what amounts to an interest free loan'" on the proceeds of wrongful conduct. Id. (quoting *SEC v. Moran,* 944 F.Supp. 286, 295 (S.D.N.Y.1996)). "The Court should look to considerations of fairness and equity in determining whether to award prejudgment interest as well as the length of time the defendants retained the proceeds of the illicit transaction." *Id.* (citing *SEC v. Stephenson,* 732 F.Supp. 438, 439 (S.D.N.Y.1990)).

Determining whether an award of interest is fair and equitable requires consideration of a defendant's personal wrongdoing. *S.E.C. v. Shah*, No. 92 Civ. 1952, 1993 WL 288285, at *6 (S.D.N.Y. 1993) (citing *Norte & Co. v. Huffines,* 416 F.2d 1189, 1191 (2d Cir.1969); *SEC v. Tome,* 683 F.Supp. 638, 639 (S.D.N.Y.1986), *aff'd,* 833 F.2d 1086 (2d Cir.1987)). "In the context of a Section 10(b) and Rule 10b-5 action, proof of the defendant's scienter is sufficient to justify an award of prejudgment interest." *Id.* (citing SEC v. *Musella,* 748 F.Supp. 1028, 1043 (S.D.N.Y. 1993)). As discussed above, the Court has found that the SEC's Complaint sets forth sufficient scienter allegations regarding Defendants' conduct in connection with the misrepresentations. Given the consent orders' prohibition against Defendants' arguing that they

9

did not violate the federal securities law as alleged in the Complaint, the Complaint's allegations provide sufficient proof of scienter to warrant prejudgment interest. Furthermore, Defendants have already consented to an award of prejudgment interest, and this Court has already entered consent orders ordering that Defendants shall pay prejudgment interest. (Doc. 3, Exs 1-3; Doc.4, Doc. 5, Doc. 6.) Any arguments in opposition to an award of prejudgment interest are not appropriately raised at this procedural juncture.

### C. Imposition of Third-Tier Civil Penalties

The SEC asks the Court to impose third-tier civil penalties pursuant to 15 U.S.C. § 78u(d)(3) as follows: (1) $1,065,417.00 on HedgeLender; (2) $356,085.00 on Stafford; and (3) $298,0645.00 on Wahler. Third-tier penalties are appropriate if the violation of securities law "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 78u(d)(3)(B)(iii)(aa)-(bb). Here, Defendants' conduct deceived potential clients, helped to perpetuate the fraudulent scheme involving One Equity's Star HedgeLoan program by inducing HedgeLender's clients to pledge millions of dollars of publicly traded stock to One Equity as collateral for stock based loans, and caused their clients to suffer a significant risk of substantial loss, and in some cases, as set forth in the Complaint, actual substantial losses. Accordingly, the Court finds that third-tier penalties are warranted unless other circumstances indicate that lesser sanctions are more appropriate.

Defendants argue that the facts and circumstances underlying the violations at issue in this action deserve lesser sanctions pursuant to the Court's equitable discretion to fashion an appropriate penalty. *See SEC v. Sargent*, 329 F.3d 329 F.3d 34, 42 (1st Cir. 2003); *S.E.C. v. Moran*, 944 F. Supp. 286, 297 (S.D.N.Y. 1996); *SEC v. Rubin*, No. 91 CIV. 6531, 1993 WL

10

405428 (S.D.N.Y. Oct. 8, 1993). Defendants cite *Rubin*, 1993 WL 405428, at *7, for the proposition that relevant factors a court should consider include the "egregiousness of the violation" and a defendant's "financial condition." Dfs.' Mem in Opp., (Doc. 21), at 19. In Rubin, the district court imposed lesser sanctions on a defendant in part because of the defendant's distressed financial situation but also in part because of the "relatively small consequences of the underlying conduct" and in part because the defendant "received neither profits . . . nor any other discernable benefit" from his illegal conduct. *Rubin*, 1993 WL 405428, at *7.

In the case at bar, Defendants benefitted financially from their illegal conduct, and the consequences of their conduct to their clients cannot be deemed "small." Thus, the only factor that would potentially warrant a lesser sanction is the impecunious financial condition in which Stafford and Wahler currently find themselves.[1] Stafford and Wahler have submitted affidavits demonstrating their current financial straits. See Stafford Aff, Doc. 21-1, at ¶¶ 25-26; Wahler Aff., Doc. 21-2, at ¶¶ 11-12.

Although the SEC argues that a defendant's financial condition is irrelevant for purposes of determining disgorgement, the SEC does not address Defendants' argument that the Court should consider their impecuniousness in determining whether to levy third-tier civil penalties against them, nor does the SEC dispute these Defendants' assertions regarding their finances or offer counterevidence. The Court also notes that the SEC declined the opportunity for a hearing on these matters. Accordingly, based upon the affidavits of Stafford and Wahler, the Court concludes that second-tier civil penalties in the amount of $50,000, pursuant to 15 U.S.C. §

---

[1] HedgeLender has not asserted financial hardship.

11

78u(d)(3)(B)(ii), are appropriate as to each of them.[2] The Court remains persuaded, however, that third-tier civil penalties in the amount of $1,065,417.00 are warranted as to HedgeLender.

### III. Conclusion

For the foregoing reasons, Plaintiff Securities and Exchange Commission's Amended Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 16) is **GRANTED** as framed—specifically, the amounts of disgorgement and prejudgment interest are granted; third-tier civil penalties are imposed upon HedgeLender, LLC, and second-tier civil penalties are imposed upon Daniel W. Stafford and Fred R. Wahler, Jr.; and the Motion by Defendants HedgeLender LLC, Daniel W. Stafford, and Fred R. Wahler, Jr. for Leave to File a Sur-Reply in Further Opposition to Plaintiff's Amended Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 31) is **GRANTED**. Because its amended motion for disgorgement is granted, Plaintiff Securities and Exchange Commission's Motion for Order to Set Disgorgement, Prejudgment Interest, and Civil Penalties (Doc. 13) is **DENIED** as moot.

Final judgment as to each Defendant will be entered by separate orders of the Court.

**IT IS SO ORDERED.**

3-29-2011
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[2] Section 78(u)(d)(3)(B)(ii) provides:
(ii) Second tier

> Notwithstanding clause (i), the amount of penalty for each such violation shall not exceed the greater of (I) $50,000 for a natural person or $250,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation, if the violation described in subparagraph (A) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

12